IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY J. SAMANGO, JR., and<br>ANTHONY J. SAMANGO, III,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant | :<br>:<br>:<br>: CASE NO. 11-00819(JHS)<br>:<br>: (Consolidated with 11-01789 (JHS))<br>:<br>:<br>:<br>:<br>:<br>: |

### CORRECTIVE STATEMENT

Pursuant to Pennsylvania Rule of Professional Conduct 3.3 and Local Rule 83.6 (Rule IV), and as directed by the Court at the hearing held on June 11, 2012, and after consultation with Plaintiffs and based on information provided by Plaintiffs, below is the deposition testimony and sections of the Report of Rule 26(f) Meeting that Plaintiff's counsel has determined must be corrected. As directed by the Court, counsel will correct statements made in the Complaints in these consolidated actions by filing Amended Complaints reflecting the corrections.

### Deposition of Anthony J. Samango, Jr. on December 14, 2011[1]

| Testimony | Correction |
|---|---|
| Q: And how much did you promise to pay this David Johnson [of CIP Frames]?<br><br>A: I did pay him ten percent. (47:22-24) | The documents produced in discovery reflect that neither Mr. Samango nor Carson Concrete made any payments to Mr. Johnson. |
| Q: Were you involved in the incorporation of CIP Frames? | Mr. Samango had a discussion with David Johnson regarding the incorporation of CIP Frames. |

---

[1] True and correct copies of the pages from the transcript of Anthony J. Samango, Jr.'s December 14, 2011 deposition on which the referenced testimony appears are attached hereto as Exhibit 1.

1

| | |
|---|---|
| A: No.<br><br>Q: Do you know who was?<br><br>A: No.<br><br>Q: Did you have any discussions with anyone regarding the incorporation of CIP Frames?<br><br>A: I did not.<br><br>Q: Did you assist David Johnson in setting up CIP Frames?<br><br>A: No. I mean, I suggested what he should do, but I didn't assist.<br><br>…<br><br>Q: So you had absolutely no involvement in the incorporation of CIP Frames?<br><br>A: I didn't want any involvement and I didn't have any.<br><br>Q: Do you know whether your son had any involvement with the incorporation of CIP Frames?<br><br>…<br><br>A: I don't know. (55:7-56:9) | |
| Q: Were you or your son ever an officer of CIP Frames?<br><br>A: No.<br><br>Q: Did you ever sign any documents, you or your son, as an officer of CIP Frames?<br><br>A: I did not. I had seen one document that purports that I was an officer during these proceedings, but that wasn't on that document when I signed it.<br><br>Q: Do you know who were the officers of CIP | Mr. Samango cannot testify regarding whether his son, Anthony Samango III, was ever an officer of CIP Frames.  He can only speak for himself. |

| | |
|---|---|
| Frames?<br><br>A: I do not. (56:10-21) | |
| Q: Did CIP Frames have a collective bargaining agreement with the unions?<br><br>A: Yeah, they had to enter into one for this project. (63:8-11) | Mr. Samango is not aware of any collective bargaining agreement between CIP Frames and the unions. |
| Q: Do you remember how many bank accounts were opened on behalf of CIP Frames in which you were a signatory?<br><br>A: Only as a result of this proceeding, I saw two.<br><br>Q: So you're only aware of two?<br><br>A: Correct. (100:18-24) | The documents produced in discovery reflect that there are six CIP Frames bank accounts on which Mr. Samango Jr. and Anthony Samango III were signatories. |
| Q: And as is reflected on the invoice, with these funds CIP Frames was supposed to pay the union benefits, Social Security, Medicare, FUTA, SUTA, workers' comp, general liability insurance and other insurance?<br><br>A: Well I had to pay the gross amount of the invoice.<br><br>Q: Carson?<br><br>A: Carson paid the gross amount of the invoice. CIP Frames paid the workers and money was reserved to pay the unions and the rest of the money went to Johnson's CIP accounts, which I have no knowledge of.<br><br>…<br><br>A: The money that went into the CIP Frames accounts that my son and I were signatory to would have covered employees' wages, union benefits and various insurances. The balance of the money and the ten percent was payable to CIP Frames, but did not go into those accounts, it went to his accounts or what he did with it, I don't know what he did with it. (198:9-21; 199:20-200:1) | Carson's vendor history reports reflect entries for all CIP Frames invoices, payments made to CIP Frames bank accounts, and the dates of the payments. Each of the payments to CIP Frames noted in the vendor history reports are reflected in deposits made to the CIP Frames bank accounts for which Mr. Samango Jr. and Mr. Samango III were signatories. There are no payments out of the six accounts to Mr. Johnson of CIP Frames or to any accounts in his name and there are no payments from Carson Concrete to Mr. Johnson of CIP Frames or to any accounts in his name. |

3

| | |
|---|---|
| …<br><br>Q: How often would you – for these invoices received from Carson Concrete, examples of which are marked as Exhibit 1, how often would you pay CIP Frames that ten percent?<br><br>A: Well, I testified earlier that we got paid from our client monthly or 60 days, whichever. So it would coincide with that.<br><br>Q: So you would pay these ten percent on a monthly basis?<br><br>A: Yeah. (201:7-16) | |
| Q: [referencing David Johnson] How recently was it that you had his phone number?<br><br>A: Years.<br><br>Q: Years?<br><br>A: Um-hum. Two, maybe three years. (175:8-25) | Mr. Samango had David Johnson's contact information, and he will look for it and if located will provide such information to the Defendant. |

### Deposition testimony of Anthony J. Samango, III on December 20, 2011[2]

| Original Testimony | Correction |
|---|---|
| Q: Are you familiar with the address 717 South Columbus Boulevard, Philadelphia, Pennsylvania?<br><br>A: I believe I rented a condo there or an apartment there a while back. It was an apartment.<br><br>Q: What was the name of the building?<br><br>A: Dockside.<br><br>…<br><br>Q: Okay. Did you ever use this as a business | Documents produced in discovery reflect that the 717 Columbus Boulevard address was used in connection with CIP Frames business.<br><br>Those documents include the following: (1) Pennsylvania's State Workers' Insurance Fund correspondence directed to CIP Frames to the attention of Anthony J. Samango, III at the 717 South Columbus Boulevard address; (2) CIP Frames' Application for Workers' Compensation Coverage listing this address as a CIP Frames mailing address; and (3) CIP Frames letterhead listing this address as the address for CIP Frames. There are also documents reflecting Carson Concrete checks |

---

[2] True and correct copies of the pages from the transcript of Anthony J. Samango, III's December 20, 2011 deposition on which the referenced testimony appears are attached hereto as Exhibit 2.

4

| | |
|---|---|
| address?<br><br>A: No. (8:25-9:5; 10:3-6) | made payable to Dockside. |
| Q: Are you an officer of any other entity from 1999 to the present?<br><br>A: From 1999 to present? Currently I'm a partner in AJS Cranes and Creek Equipment, but right now I can't remember anything else other than that. (14:25-15:4) | Mr. Samango was an officer of Carson Concrete at the time of his deposition, serving as a Vice President, and he still is an officer of Carson Concrete.<br><br>Documents produced in discovery reflect that Mr. Samango signed documents, and certain documents identify him as the "President" of CIP Frames. |
| Q: Okay. Were you ever an officer of CIP Frames?<br><br>A: No.<br><br>Q: Do you know who the president of CIP Frames was?<br><br>A: I'm not really familiar with the officers of that company.<br><br>(52:5-11) | Documents produced in discovery reflect that Mr. Samango signed documents, and certain documents identify him as the "President" of CIP Frames. |
| Q: What was CIP Frames?<br><br>A: I wasn't involved in it so I really don't know a whole lot about it. I probably learned more from reading some things from our attorneys than I did back then.<br><br>…<br><br>Q: What did you know back in 2005 about CIP Frames?<br><br>A: I just remember hearing – you know, I knew the name, possibly, and that was about it. I wasn't really involved. I remember seeing some checks and some different things like that, but like I said, I wasn't – really wasn't what I did. (45:5-9; 45:13-19) | Documents produced in discovery reflect that Mr. Samango signed documents, and certain documents identify him as the "President" of CIP Frames and state that he oversaw CIP Frames' operations.<br><br>Mr. Samango is aware that Carson Concrete and CIP Frames had a relationship in 2005 and in part of 2006. Mr. Samango was involved in this relationship, as he signed checks from CIP Frames bank accounts to pay various expenses associated with employees and other expenses. |
| Q: Do you know where CIP Frames was located? | Documents produced in discovery reflect three addresses used by CIP Frames in 2005: (1) 717 Columbus Blvd, Philadelphia, PA; (2) 901 |

5

| | |
|---|---|
| A: No, I don't remember right now.<br><br>Q: Do you know what CIP Frames did in 2005?<br><br>A: I mean I knew they were some sort of labor company, but that's about all I know.<br><br>Q: Did Carson Concrete have a business relationship with CIP Frames?<br><br>A: I don't know how to answer that because I wasn't really involved. I mean I know the name, but I don't know what business relationship would exactly mean, but I know they did work together.<br><br>…<br><br>Q: So CIP Frames was providing the employees to Carson Concrete for the Waterfront Square project?<br><br>A: That sounds about right, but like I said, I wasn't involved in the dealings, so I'm not sure exactly how it worked.<br><br>Q: Do you know anything about CIP Frames' address?<br><br>…<br><br>A: I don't know what the question is.<br><br>Q: Do you know what CIP Frames' address was –<br><br>A: No.<br><br>Q: -- in 2004?<br><br>A: I wasn't involved in any of that part at all, so I don't know.<br><br>Q: Did your lack of involvement include the incorporation of CIP Frames? | North Penn Street, Philadelphia, PA; and (3) 625 W. Ridge Pike, Conshohocken, PA.<br><br>Mr. Samango is aware that Carson Concrete and CIP Frames had a relationship in 2005 and in part of 2006. Mr. Samango was involved in this relationship, as he signed checks from CIP Frames bank accounts to pay various expenses associated with employees and other expenses. |

6

| | |
|---|---|
| A: Yeah. I was not involved in that. I don't remember any at all – I remember signing checks, like I said, in my father's absence is really what my memory of the whole thing was.<br><br>Q: The whole thing being?<br><br>A: The whole CIP Frames.<br><br>(49:17-50:7; 50:25-51:5; 139:6-25) | |
| Q: … Were you involved in the incorporation of CIP Frames?<br><br>A: No. (60:16-18) | Mr. Samango does not recall whether he was involved in the incorporation of CIP Frames. |
| Q: [referencing a signature card for a CIP Frames bank account] Do you know, when you signed this, was the document filled out?<br><br>A: Well, it says president of CIP which I know I wasn't, so I don't think that was there. I'm pretty sure that wasn't there. The rest of the document I can't remember exactly because it doesn't really matter that much, but since I wasn't president, there is no reason for that to be there. (68:21-69:3) | Mr. Samango cannot recall whether the signature card was filled out when he signed it.<br><br>Mr. Samango does not know, from a legal perspective, who was or was not an officer of CIP Frames. Documents produced in discovery reflect that Mr. Samango signed documents, and certain documents identify him as the "President" of CIP Frames. |
| Q: [referencing a signature card for a CIP Frames bank account] And when you filled out this document – when you signed this document which is reflected in Exhibit 7, was the signature card filled out?<br><br>A: I guess I have the same answer as before, I mean I don't remember specifically, but I wouldn't have signed something that says president knowing that I wasn't president, so I believe that that wasn't there. (84:22-85:5) | Mr. Samango cannot recall whether the signature card was filled out when he signed it.<br><br>Mr. Samango does not know, from a legal perspective, who was or was not an officer of CIP Frames. Documents produced in discovery reflect that Mr. Samango signed documents, and certain documents identify him as the "President" of CIP Frames. |
| Q: [referencing a signature card for a CIP Frames bank account] And when you signed this signature card, was this document filled out?<br><br>. . .<br><br>A: I'll answer the same way I did the last two. I wasn't president of CIP, so I wouldn't have signed under there. So I'm sure that that wasn't | Mr. Samango cannot recall whether the signature card was filled out when he signed it.<br><br>Mr. Samango does not know, from a legal perspective, who was or was not an officer of CIP Frames. Documents produced in discovery reflect that Mr. Samango signed documents, and certain documents identify him as the "President" of CIP Frames. |

7

| | |
|---|---|
| there. The rest of it doesn't mean a whole lot, so I don't know. (95:3-11) | |
| Q: And did you know who was the officer of CIP Frames?<br><br>…<br><br>A: No, not at the time, I mean I don't know the officers of any of the companies we work with or for or under. (109:8-13) | Mr. Samango does not know, from a legal perspective, who was or was not an officer of CIP Frames. Documents produced in discovery reflect that Mr. Samango signed documents, and certain documents identify him as the "President" of CIP Frames. |
| Q: Was it after the Waterfront Square project?<br><br>A: I mean I remember at some point that there was a company, CIP Frames. I don't know the officers, like I said, who was the officer, I don't know the specific details. But I know that my father made some agreement with CIP Frames, but I don't know who was the president and who was the officers. I don't know those kind of details. And I obviously signed a lot of checks that had that company on it so I was aware of the company, but I don't know the details. (111:14-23) | Mr. Samango does not know, from a legal perspective, who was or was not an officer of CIP Frames. Documents produced in discovery reflect that Mr. Samango signed documents, and certain documents identify him as the "President" of CIP Frames. |
| Q: Do you know who was involved with the incorporation of CIP Frames?<br><br>A: I believe I answered this before. I wasn't involved in it so I'm not sure. (154:18-21) | Mr. Samango does not recall whether he was involved with the incorporation of CIP Frames. |

## Correction to Rule 26 Reports[3]

The following two paragraphs appear on page 2 of the Report of Rule 26(f) Meeting for

the matter of Anthony Samango Jr., with corrections tracked:

> Mr. Samango is the sole owner and operator of Carson Concrete which is a construction subcontractor specializing in large scale projects. Carson Concrete <ins>used</ins> <del>hired</del> CIP Frames as a labor subcontractor for a large construction project that began <del>and ended</del> in 2005 <ins>and ended in or around early 2006</ins>. CIP Frames invoiced Carson Concrete <del>as CIP Frames laborers completed work on the project</del> and Carson Concrete remitted payments to CIP Frames <del>accordingly</del>.

---

[3] True and correct copies of the Rule 26 Reports are attached hereto as Exhibit 3.

Based on his experience in the industry, Mr. Samango was concerned that if CIP Frames failed to timely pay union benefits for CIP laborers the result could be a work stoppage for which Carson Concrete would be held liable. In order to ensure that ~~union~~ payroll, ~~and~~ union benefits, and insurances were paid on time, and thereby avoid any work stoppages, Mr. Samango was authorized to pay ~~union~~ payroll, union ~~and~~ benefits, and insurances out of ~~two~~ CIP Frames bank accounts. ~~Importantly, Mr. Samango did not have the authority to issue checks for anything other than union payroll and benefits nor did he exercise or hold any decision making authority over CIP Frames.~~

The following two paragraphs appear on page 2 of the Report of Rule 26(f) Meeting for the matter of Anthony Samango Jr., with corrections tracked:

Mr. Samango is an employee of Carson Concrete which is a construction subcontractor specializing in large scale projects. Carson Concrete used ~~hired~~ CIP Frames as a labor subcontractor for a large construction project that began ~~and ended~~ in 2005 and ended in or around early 2006. CIP Frames invoiced Carson Concrete ~~as CIP Frames laborers completed work on the project~~ and Carson Concrete remitted payments to CIP Frames ~~accordingly~~.

Based on his experience in the industry, Mr. Samango was concerned that if CIP Frames failed to timely pay union benefits for CIP laborers the result could be a work stoppage for which Carson Concrete would be held liable. In order to ensure that ~~union~~ payroll, ~~and~~ union benefits, and insurances were paid on time, and thereby avoid any work stoppages, Mr. Samango was authorized to pay ~~union~~ payroll, union ~~and~~ benefits, and insurances out of ~~two~~ CIP Frames bank accounts. ~~Importantly, Mr. Samango did not have the authority to issue checks for anything other than union payroll and benefits nor did he exercise or hold any decision making authority over CIP Frames.~~

    ARCHER & GREINER
    A Professional Corporation
    Attorneys for Plaintiffs


    By: __/s/*Darth M. Newman*_____
        JOSEPH A. MARTIN
        DARTH M. NEWMAN

Dated: June 26, 2012

8541284v2